## EMIL F. JANDRIC AND ANOTHER v. JOHN D. SKAHEN AND ANOTHER.[1]

December 7, 1951.

No. 35,561.

*D. D. Daly,* for appellants.
*Bouthilet & Daubney,* for respondents.

FRANK T. GALLAGHER, JUSTICE.

Appeal from a judgment of the municipal court of St. Paul denying restitution of real estate.

Plaintiffs are husband and wife, as are defendants. They will be referred to hereinafter respectively as plaintiff and defendant.

On June 20, 1950, plaintiff sold certain real estate to defendant

---

[1]Reported in 50 N. W. (2d) 625.

under a contract for deed. Plaintiff proved a default in the terms of the contract, service of the statutory 30 days' notice of cancellation of the contract, and failure to make up the default within the 30-day period. As a defense, defendant maintained that plaintiff had waived his right to insist upon a forfeiture. The issue of waiver was submitted to a jury, which returned a verdict for defendant.

Defendant failed to make the monthly payment due under the contract on September 15, 1950, and also failed to pay the first half of the taxes payable that year. The notice of cancellation of the contract on the ground of these defaults was served on defendant on September 28, 1950. On October 28 (the last day of the 30-day period), defendant left a check for the amount in default at the office of plaintiff's attorney, Leo J. Maher. This check was mailed to plaintiff on the following Monday, October 30, and upon receipt thereof plaintiff deposited it in his account for collection. Payment on the check was refused because of insufficient funds, and defendant was notified of this on November 2, 1950. The following day, defendant appeared in Maher's office and offered the amount in default in the form of a certified check for part and the balance in cash. Maher refused to take the payment on the ground that the 30-day period had expired and that he had no authority to jeopardize the position of his client. However, after consultation with defendant's attorney, Maher agreed to take the payment with the understanding that it would not be a payment or reinstatement of the contract unless approved by plaintiff; and this understanding was incorporated into the terms of the receipt given defendant by Maher. Plaintiff was notified of this transaction on the same day, November 3, 1950.

From this point, the testimony as to what occurred is in conflict. Defendant testified that he had no further conversations or dealing with plaintiff or his attorney until November 17, 1950, a period of 14 days after he had given the money to Maher. Plaintiff's witness, Maher, testified that he spoke to defendant several times between November 3 and 17 and that each time he told defendant that plaintiff refused to accept the money and was insisting that the contract

was at an end. Maher further testified that defendant requested him on such occasions to hold the money a while longer until he (defendant) could see plaintiff and see what he could do with him or until he could try and get a loan to pay off plaintiff. Plaintiff testified that he talked to defendant over the telephone on November 12 and that he told defendant that he had not accepted the money and "was all through with this." On November 17, the payment still in its original form was taken from its storage place in Maher's desk and returned to the office of defendant's attorney. This action was taken following a telephone conversation between Maher and defendant in which Maher told defendant that plaintiff would not take the money and that "in fact, the night before he [plaintiff] had called me and said to get rid of it once and for all."

■ M. S. A. 559.21 provides for the termination of a contract for the conveyance of land by the vendor upon default in the terms of the contract by the vendee by service of a notice stating that the contract will terminate in 30 days unless during that time the vendee complies with the conditions in which the default has been made. The statute further provides:

"If, within the time mentioned, the person served complies with such conditions and pays the costs of service, the contract shall be thereby reinstated; but otherwise shall terminate."

Before this statute became effective, if there was a failure to make payment on the designated date and the contract made time of the essence, the vendor could insist upon a forfeiture peremptorily cutting off the rights of the vendee. See, Graceville State Bank v. Hofschild, 166 Minn. 58, 206 N. W. 948. However, certain conduct on the part of the vendor would constitute a waiver of his right to insist upon a forfeiture. If the party entitled to enforce the default should, after default and with knowledge of the facts, treat the contract as still in force or should deal with the other party in a manner consistent only with a purpose on his part to regard the contract as still existing and not terminated by default, the right to enforce the default would be effectually waived. Quinn v. Olson,

34 Minn. 422, 26 N. W. 230. Upon tender of payment after the stipulated time, the vendor was faced with the choice between rejecting the offer and insisting upon a termination of the contract or accepting the offer. Cf. Blythe v. Kujawa, 177 Minn. 79, 224 N. W. 464. If he accepted the offer, it constituted conduct inconsistent with an intention to insist upon the forfeiture and amounted to a waiver of that right. Tingue v. Patch, 93 Minn. 437, 101 N. W. 792. That acceptance of payment after default is wholly inconsistent with the insistence upon a forfeiture is demonstrated by the holdings that the installments in default under such a contract are not collectible after the vendor has terminated the contract because of the default. Des Moines Joint Stock Land Bank v. Wyffels, 185 Minn. 476, 241 N. W. 592; Warren v. Ward, 91 Minn. 254, 97 N. W. 886. A similar principle is illustrated by the general rule that the receipt of rent waives prior forfeitures known to the lessor. Central Union Trust Co. v. Blank, 168 Minn. 312, 210 N. W. 34, and additional cases cited therein involving covenant to keep premises in condition, covenants against subletting, etc. Commenting upon this general rule, this court said in that case (168 Minn. 316, 210 N. W. 35):

"* * * The rule applied in such cases is wholesome and just. If the lessor knows of breaches justifying a forfeiture, and chooses to take rent as if the lease continued, he as a matter of law waives a right to assert prior breaches as grounds of forfeiture."

In Sylvester v. Holasek, 83 Minn. 362, 86 N. W. 336, this court was presented with the question whether certain acts occurring subsequent to the expiration of the statutory 30-day period constituted a waiver by the vendor of his right to claim the forfeiture. The vendor's wife, in the absence of her husband, had accepted a check from the vendee. The court found that the check had been seasonably returned and held that no act by the wife of the vendor, could serve to reinstate the vendee to his rights under the contract. Although the court plainly held that the contract was terminated upon the expiration of the 30-day period, its inquiry into whether

the facts shown constituted a waiver indicated that there would be a waiver if the proper facts were shown. The statute now expressly states the court's holding in the Sylvester case, *i. e.*, that the contract is terminated at the expiration of the 30-day period[2]; but, in view of the court's approach to the problem of waiver in that case, it is our opinion that the statute does not preclude the application of waiver principles, assuming that the proper facts are established.

Reaction against the common-law rule permitting forfeitures without notice and for comparatively insignificant defaults resulted in the passage of statutes of this type in Minnesota and in several other states. 52 Harv. L. Rev. 129. This court has stated that the purpose of our statute is to "ameliorate the harsh rule of the common law and to remove grounds for controversy or dispute." Graceville State Bank v. Hofschild, 166 Minn. 62, 206 N. W. 949, *supra*.

The Iowa court in Sutphin v. Holbrook, 122 Iowa 272, 276, 97 N. W. 1100, 1102, under a cancellation statute similar to our statute, said with reference to payment after the statutory 30-day period had elapsed:

"* * * The notice was given here, but, after it was given, plaintiff made some payments, which, it is claimed, amount to a waiver of the forfeiture. If these payments were made and accepted in performance of the contract which contained an agreement to sell, then, doubtless, there was a waiver."

Forfeitures are not favored, and the waiver principle has always been available in this type of situation to defeat them. There is no reason to suppose that this statute, itself designed to "ameliorate" the harsh result of forfeiture, was intended to deprive the vendee of any relief which he might obtain through the operation of a waiver. We conclude, therefore, that a vendor may waive his right

---

[2]The statute under which the Sylvester case was decided (L. 1897, c. 223) does not expressly state the effect of the expiration of the 30-day period without performance by the vendee.

to insist upon a forfeiture by acts done after the expiration of the 30-day period, and that his acceptance of the amount in default as a payment on the contract constitutes such a waiver as a matter of law.

The next question is whether the evidence presented is sufficient to support a finding that plaintiff had accepted the offer as payment on the contract. The mere transfer of the sum of money to the possession of plaintiff's attorney under the terms of the receipt given does not establish the required acceptance by plaintiff. In order to find that plaintiff had accepted the payment, it is necessary to find that he at some time formed an intent to accept the money as payment. The jury could have found from the evidence that plaintiff remained silent for a period of 14 days after he learned that defendant had transferred a sum of money to plaintiff's attorney. This lapse of time is the only evidence of plaintiff's intent to accept the payment. It is certainly true that a short lapse of time under the terms of the transfer in this case would not give rise to an inference that plaintiff had formed an intent to accept the payment. See, Sylvester v. Holasek, 83 Minn. 362, 86 N. W. 336. However, retention of payment, through possession by an individual or his agent, for a continued lapse of time makes ambiguous the intention with which the payment is retained. It is our opinion that retention for a period of 14 days, under the circumstances of this case, where all parties concerned were in close proximity to each other and rapid means of communication were open to them, is sufficient evidence to support an inference that plaintiff had formed an intent to accept the payment. That this is true is perhaps more readily seen by supposing that on the fourteenth day defendant had asked to have the money returned and had been refused. In an action to recover the money, it would seem clear that plaintiff's evidence of retention of the payment for 14 days would be enough to sustain a finding that he had accepted it. The intent to accept the payment, once formulated, would constitute a waiver, and a change of mind later would not affect it.

The instructions to the jury required it to find for plaintiff, unless it found by a fair preponderance of the evidence that plaintiff had waived the right to claim the forfeiture. As we view the record, the fact question was whether plaintiff had accepted the payment; and, insofar as the jury was required to find an intent on the part of plaintiff to waive his rights, the instruction was more favorable to plaintiff than was called for by the facts. However, plaintiff cannot be heard to complain on that score. The fact question of whether plaintiff had accepted the payment is no different from that of an ordinary question of fact in civil actions, and the court's charge that the jury could find a waiver on a "fair preponderance of the evidence" was correct.

Affirmed.